PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 1:22-CR-394 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| EZRA DAVIS, | ) | |
| | ) | **ORDER** |
| Defendant. | ) | [Resolving ECF No. 15] |

Pending before the Court is Defendant Ezra Davis' Motion to Suppress. ECF No. 15. The Government responded in opposition to Defendant's Motion. ECF No. 16. The Court, having considered the parties' filings, applicable law, and the evidence and arguments presented at the December 1, 2022 evidentiary hearing, denies Defendant's Motion.

## I. Factual Background[1]

On January 22, 2022, Defendant Ezra Davis was driving to visit his young child at the hospital, "weaving left of the center line several times and returning to the southbound lane of travel," when Deputy Jason Smith of the Lorain County Sherriff's Office initiated

---

[1] The factual background is based on the evidence presented in the parties' briefs and those presented during the evidentiary hearing, which includes the testimony of Deputy Jason Smith and Timothy Ackerman and Defendant's Exhibit A, the police report written by Deputy Smith. Neither video nor audio dash cam recordings of the arrest, search, and seizure are available. Deputy Smith testified during the evidentiary hearing that his dash cam memory card was full when the arrest took place, which is why the dash cam was unable to record the events that transpired. Deputy Ackerman testified that his dash cam, which he would have had to manually turn on, was also off and unable to record the incident.

(1:22-CR-394)

a traffic stop.  ECF No. 16 at PageID #: 65; ECF No. 15 at PageID #: 57.  Deputy Smith approached the vehicle, a 2005 Chevrolet SUV, and requested that Defendant provide him with identification.  Defendant handed Deputy Smith his Ohio Department of Corrections prison release card.  Deputy Smith then asked dispatch to run Defendant's information through LEADS.[2]  Dispatch informed Deputy Smith that Defendant had three outstanding warrants for his arrest in Ohio and a nationwide warrant for "pickup" issued by the Ohio Adult Parole Authority.  During the evidentiary hearing, Deputy Smith also testified that Defendant appeared distraught, kept putting his car in drive, and seemed to be reaching his hand towards the backseat of the vehicle.  The outstanding warrants and Defendant's erratic behavior gave Deputy Smith cause for concern for his and Defendant's safety, so Deputy Smith called for backup.

Moments later, Deputy Ackerman and Deputy Kruger responded to the scene. Deputy Ackerman and Deputy Smith approached the driver's side of the vehicle and Deputy Kruger approached the passenger's side.  Deputy Smith testified during the evidentiary hearing that while the deputies were attempting to coax Defendant to cooperate and to exit his vehicle, they had to restrain Defendant's arms to keep him from driving away from the scene.  According to Deputy Smith's testimony, Deputy Kruger had to knock Defendant's right arm away from the gear selector several times to prevent Defendant from putting his car into drive.  Following an initial struggle, Deputy Kruger was finally able to remove the key from the ignition to turn off the vehicle.  Only after the

---

[2] LEADS is the acronym for the Law Enforcement Automated Data System operated by the Ohio state highway patrol.  Ohio Admin. Code 4501:2-10-01.  It "provides computerized data and communications for criminal justice agencies within the state of Ohio." Id.

2

(1:22-CR-394)

deputies requested multiple times that Defendant step out of his vehicle did Defendant eventually comply.

As soon as Defendant exited his vehicle, the deputies scrambled to secure Defendant and ensure that he was unarmed and did not have access to weapons. While Deputy Smith handcuffed Defendant, Deputy Ackerman simultaneously patted down Defendant's person and asked Defendant if there was anything illegal within his reach. Deputy Ackerman testified that Defendant admitted to having a gun in the backseat and weed in a Cheez-It box on the front passenger seat of his vehicle. Defendant denies making these admissions.

After the initial rush to ensure that Defendant was secured and unarmed, the deputies ushered Defendant to the back of Deputy Smith's patrol car. Deputy Ackerman subsequently searched Defendant's vehicle for the admitted contraband and located a Cheez-It box containing marijuana on the front passenger seat and a Sig Sauer, model P365, 9mm pistol with a round in the chamber and eleven rounds in the magazine on the passenger-side backseat floorboard. Deputy Smith testified that the loaded weapon was laying upright, positioned on the transmission hump of the car in the backseat, ready for Defendant to access and use while he was sitting in the driver's seat. An additional Sig Sauer magazine with eight rounds and a digital scale was also found in the same area. Once the firearm, ammunition, and marijuana were seized, the deputies confirmed with

(1:22-CR-394)

Defendant that his girlfriend, Alexis Smith, could come retrieve the vehicle. Alexis Smith was able to retrieve her vehicle, thus the vehicle was never towed or impounded.[3]

## II. Discussion

Defendant seeks to suppress all alleged inculpatory statements because they were made in violation of *Miranda* and all evidence from the alleged illegal search of his vehicle. It is undisputed that Defendant was never given *Miranda* warnings. In *Miranda v. Arizona*, the Supreme Court held that an individual's self-incriminating statement is only privileged under the Fifth Amendment if the individual was coerced into making the statement while subject to custodial interrogation by the police. 384 U.S. 436, 460–61 (1966). The Supreme Court has also held that the Fifth Amendment's guarantee of a right against self-incrimination does not prohibit all incriminating admissions. *New York v. Quarles*, 467 U.S. 649, 654 (1984). Hence, *Miranda* warnings are merely prophylactic measures, and the absence of such warnings without police coercion is insufficient to suppress a defendant's incriminating statement. *Quarles*, 467 U.S. at 654.

The Government opposes Defendant's Motion, claiming that the public safety exception permits the officer's questioning of Defendant without reciting *Miranda* warnings and that the officers had probable cause to search the vehicle. For these reasons, the Government argues that neither Defendant's statement nor the evidence found in the vehicle should be suppressed.

---

[3] It is undisputed that Defendant was driving Alexis Smith's car at the time Deputy Smith initiated this traffic stop. The relevant warrants were for Defendant's arrest and not for the seizure of Alexis Smith's vehicle.

(1:22-CR-394)

### A. Questioning of Defendant Without *Miranda* Warnings

Generally, the public safety exception excuses law enforcement officers from having to provide *Miranda* warnings as a prerequisite to questioning an individual and makes admissible the individual's responses to those questions. *Quarles*, 467 U.S. at 659. This exception applies "when officers have a reasonable belief based on articulable facts that they are in danger" and ask questions to secure their own and the public's safety rather than to elicit testimonial evidence. *United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001). An officer's intent to secure safety rather than to interrogate can be gauged by whether the officer's questions are brief and limited in purpose. *See United States v. Harris*, 611 F.2d 170, 172 (6th Cir. 1979). To determine the reasonableness of an officer's belief that they are in danger, the Court must evaluate "objective facts rather than [] the officer's subjective state of mind." *United States v. Williams*, 483 F.3d 425, 428 (6th Cir. 2007). Such an evaluation considers factors including "the known history and characteristics of the suspect, the known facts and circumstances of the alleged crime, and the facts and circumstances confronted by the officer when he undertakes the arrest." *Id*. The Sixth Circuit provides that two conditions must both be met in order for the public safety exception to apply, assuming there is no other evidence rebutting the "inference that the officer reasonably could have perceived a threat to public safety." *Id.* Law enforcement officers "must have reason to believe (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it." *Id.* When these conditions are met and the factors indicate that law enforcement officers had concern for safety, the officers are excused from providing *Miranda* warnings and the arrested individual's uncoerced

(1:22-CR-394)

statements are admissible. See Quarles, 467 U.S. at 659; Oregon v. Elstad, 470 U.S. 298, 309 (1985).

The objective facts and circumstances surrounding the traffic stop at issue gave rise to the deputies' reasonable concern for their own and the public's safety. When Deputy Smith initiated contact with Defendant, Deputy Smith observed Defendant's nervous demeanor and noted that Defendant appeared to be reaching his arm towards the backseat and kept putting his vehicle in drive even after Deputy Smith asked him to leave the vehicle in park. Deputy Ackerman also testified that, once he arrived at the scene, Defendant continued to be uncooperative, and the deputies had to physically restrain Defendant in his vehicle to prevent Defendant from putting his car in drive and remove the key from the ignition to prevent Defendant from moving the vehicle in an attempt to flee or injure an officer. In addition to Defendant's uncooperative and suspicious behavior, the deputies were put on notice about Defendant's criminal record as soon as Defendant presented his Ohio Department of Corrections prison release card and the LEADS search revealed the nationwide warrant relating to Defendant's parole violation. The totality of these circumstances reasonably led the deputies to be concerned about the possibility that Defendant could pose a danger to them and have access to a weapon.

Once Defendant exited the vehicle, the next thirty seconds flashed by in one fluid, chaotic moment. Deputy Ackerman permissibly questioned Defendant about items within Defendant's reach without first having Mirandized him while Deputy Ackerman patted down Defendant and Deputy Smith handcuffed Defendant. Cf. United States v. Simpkins, 978 F.3d 1, 11 (1st Cir. 2020) (finding that "the trooper's question was posed in furtherance of a reasonable and briskly conducted check for weapons . . . Under the

6

(1:22-CR-394)

public safety exception, the trooper was not required to make a split-second decision about whether to subordinate his immediate safety concerns to the admissibility of any answers he might receive to his pat-down-related questions" after the defendant admitted to possessing a pocketknife).  By the time the deputies were handcuffing and patting down Defendant, the combination of Defendant's behavior, prior criminal record, and outstanding warrants for his arrest gave the deputies articulable reasons for believing they could be in danger and Defendant could have access to a weapon.  Moreover, Deputy Ackerman's questioning of Defendant was limited to the purpose of ensuring the safety of the deputies and the public and not for the purpose of eliciting testimonial evidence.  See *Quarles*, 467 U.S. at 659; *Talley*, 275 F.3d at 563.

      The Court finds it credible that in the spur of the moment, Defendant, caught up in the commotion of being handcuffed and patted down, admitted to having a gun and marijuana in his vehicle.  Under the circumstances presented in the case at bar, the public safety exception applies, and the officers were excused from giving Defendant *Miranda* warnings before questioning him.  Consequently, the Court denies Defendant's Motion to suppress the statements he made regarding the location of the firearm and marijuana inside the vehicle.

### B.  Search of the Vehicle

      The Fourth Amendment requires probable cause for all searches and seizures, including warrantless searches of lawfully stopped vehicles.  *United States v. Crumb*, 287 F. App'x 511, 513 (6th Cir. 2008).  "Probable cause to search a vehicle is defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'"  *United States v. Lyons*, 687 F.3d 754, 764 (6th Cir. 2012) (quoting

(1:22-CR-394)

Smith v. Thornburg, 136 F.3d 1070, 1074 (6th Cir. 1998)).  For example, if there is a "fair probability that contraband or evidence of a crime will be found," such circumstances may give rise to probable cause for officers to search the vehicle.  Lyons, 687 F.3d at 764.  During a traffic stop, reasonable suspicion "may ripen into probable cause to search a vehicle based on the officer's interactions with the car's occupants."  Id. (citing United States v. Craig, 198 Fed.Appx. 459, 463 (6th Cir. 2006)).

Grounds for a valid search and seizure must be established independently from lawful grounds for an arrest.  Chambers v. Maroney, 399 U.S. 42, 49 (1970).  Even if there were a valid warrant authorizing an arrest, law enforcement officers must still have reasonable "belief that the contents of the automobile offend against the law" for a concurrent search and seizure to be deemed constitutional.  See id.  The Supreme Court has maintained that a search incident to an arrest is lawful if there are evidentiary or safety concerns present at the time of the arrest.  Davis v. United States, 564 U.S. 229, 234–35 (2011); Arizona v. Gant, 556 U.S. 332, 351 (2009).  Non-testimonial physical evidence discovered as a result of an unwarned statement can be admissible.  United States v. Crowder, 62 F.3d 782, 786 (6th Cir. 1995) (finding that "non-testimonial physical evidence, such as [a] shotgun, discovered due to an unwarned statement is admissible if the unwarned statement was voluntary").

What began as a simple traffic stop ripened into probable cause for the arresting deputies to search Defendant's vehicle.  See Lyons, 687 F.3d at 764.  Although a traffic violation, alone, is insufficient to establish probable cause for a vehicular search, the totality of the circumstances surrounding an officer's encounter with a defendant may be sufficient to establish probable cause for a search.  See id.; Gant, 556 U.S. at 343.    In

(1:22-CR-394)

this case, Deputy Smith made a traffic stop after observing Defendant violate Ohio R.C. § 4511.33 at approximately 11:00 a.m. on a Saturday morning. The deputy credibly testified that he expected a driver in medical distress. Instead, he encountered Defendant. Upon initiating contact with Defendant, Deputy Smith noticed Defendant's erratic behaviors and learned about his prior incarceration and outstanding warrants for arrest. These circumstances reasonably gave rise to Deputy Smith's concern for his own and Defendant's safety, which led him to call for backup. When Deputies Ackerman and Kruger arrived as reinforcement, they helped to secure Defendant. Deputy Ackerman, like Deputy Smith, observed Defendant acting erratically. Once Defendant stepped out of the vehicle, the rush to secure and possibly disarm Defendant led Deputy Ackerman to ask Defendant whether he had anything illegal within his reach without first Mirandizing Defendant. Defendant replied that he had a gun in the backseat and weed in a Cheez-It box on the front passenger seat. The public safety exception allows Defendant's unwarned statement to be admissible, and the Court finds it credible that Defendant admitted to possession of the firearm and marijuana in the seconds of chaos that ensued after he exited his vehicle.

      Defendant argues that by the time the officers searched his vehicle, he was handcuffed and could no longer physically access the vehicle. Regardless, once Defendant revealed that he had a firearm and marijuana in his vehicle, the deputies had probable cause to believe that his vehicle contained contraband and subsequently conducted a valid search of his vehicle. Had they not conducted the search after being notified about the firearm and marijuana, the deputies would risk posing a danger to the public. This is particularly true in this case because the deputies did not tow or impound the vehicle, but rather allowed

9

(1:22-CR-394)

Defendant's girlfriend, Alexis Smith, to retrieve the vehicle. Leaving an identified firearm in a vehicle that is not in police custody raises a public safety concern. *Cf. Quarles*, 467 U.S. at 657 (finding it reasonable that the police questioned a suspect without reciting *Miranda* warnings about the whereabouts of a gun that "they had every reason to believe the suspect had just removed from his empty holster and discarded in the supermarket" because leaving a gun "concealed somewhere in the supermarket, with its actual whereabouts unknown" posed multiple dangers to the public). It was, therefore, reasonable for the deputies to search and remove the firearm and other illegal contraband from the vehicle to prevent the public from gaining access to those items. Accordingly, the Court denies Defendant's Motion to suppress physical evidence stemming from the vehicular search.

### III. Conclusion

For the foregoing reasons, Defendant's Motion to Suppress (ECF No. 15) is denied. Trial will proceed as scheduled on December 12, 2022.

IT IS SO ORDERED.

| | |
|---|---|
| December 6, 2022 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |